FILED

2010 Jan-27  AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

RACHEL MASSEY,              ]
                                 ]
     Plaintiff,            ]
                                 ]
     vs.                  ]   7:08-CV-02025-LSC
                                 ]
SMITHWAY MOTOR XPRESS, INC.,  ]
WESTERN EXPRESS, INC.,      ]
                                 ]
     Defendants.         ]

Memorandum of Opinion

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed on September 25, 2009, by Defendant Smithway Motor Xpress, Inc. ("Defendant" or "Smithway").  (Doc. 35.)  Rachel Massey ("Plaintiff") has brought this action for claims arising from an incident in which an employee of Defendant, Roy Scott Stillwell ("Stillwell"), kidnapped and sexually assaulted Plaintiff over a period of four days.  (Doc. 1.) Western Express, Inc. ("Western"), the parent company of Smithway, was originally a party to this action but was dismissed with prejudice on June 1,

Page 1 of  26

2009, pursuant to a stipulated motion by Plaintiff.  (Docs. 21-23.)  Plaintiff has filed four counts against Defendant for vicarious liability; negligent or wanton hiring, retention and supervision; negligence and wantonness; and combined and concurring negligence and wantoness. Defendant has moved for summary judgment on all counts.  (Doc. 35.)  Plaintiff has also filed a partial motion for summary judgment on Defendant's defense of contributory negligence.  (Doc. 37.)  The issues raised in the parties' motions for summary judgment have been briefed by both parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion will be GRANTED in part and DENIED in part and Plaintiff's motion will be DENIED.

II.    Facts.[1]

On December 8, 2007, Stillwell, a truck driver for Defendant, met Plaintiff at a truck stop parking lot in Montgomery, Alabama.  Plaintiff asked

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

to use Stillwell's phone.  After entering the cab of Stillwell's tractor, Stillwell hit Plaintiff in the face and then choked her until she passed out. Stillwell then bound Plaintiff's hands and feet, and held her hostage in the sleeper compartment of his tractor for a period of four days.  During that time, Stillwell repeatedly physically and sexually assaulted Plaintiff.  On December 11, Plaintiff managed to escape from Stillwell, and he was subsequently arrested.  Stillwell pleaded guilty to his crimes and was sentenced to seventeen years in prison.

At all times during the assault, Stillwell was an employee of Defendant and had been since November 23, 2007.  While Plaintiff was tied up in the back of Stillwell's tractor, Stillwell continued to conduct Defendant's business in Alabama, Georgia, South Carolina, North Carolina, and Florida.

Defendant is a flat-bed carrier hauling products and merchandise across the United States.  In addition to approximately six hundred company owned tractors, Defendant also contracts with another four hundred owner operators.  When the demand for drivers is great, Defendant's in-house driver recruiters are assisted by various third-party recruiters to assist in the hiring of additional commercial truck drivers, one of which is Quality Driver

Connection ("QDC").  At the time of Stillwell's hiring, Defendant needed to fill sixty-two of its six hundred tractor fleet.  QDC supplied Defendant with Stillwell's name.

Defendant has established driver hiring requirements for its applicants designed to protect the safety of the public.  Applicants are required to have a steady work history and must provide information concerning all previous employers during the ten year period preceding the application. Applicants are required to fill out the application completely without leaving gaps in employment, and applicants are warned that incomplete applications will not be processed.

On November 18, 2007, Stillwell submitted a formal application with Defendant.  In the ten years leading up to his application, Stillwell was employed with twenty-two motor carriers, of which he disclosed twenty-one.  Defendant discovered the additional employer during the screening process.  Stillwell had been terminated or was not eligible for rehire from at least eight of these employers, including Western Express, the parent company of Defendant.

The Federal Motor Carrier Safety Regulations require motor carriers to inquire as to prior employers during the three year period prior to the date of prospective employment.  In order to investigate driver applicants and verify information, Defendant ordered a D.A.C. Prior Employment History for Stillwell.  This report indicated that Stillwell had been discharged and was not eligible for rehire by Copp Transportation, a company he had failed to include on his application.  Ace Car Carriers ("Ace"), one of the prior employers, informed Defendant that Stillwell was not eligible for rehire. Ace brought felony embezzlement charges against Stillwell on March 8, 2007, in New Mexico.  High Country Transport, another prior employer of Stillwell, terminated Stillwell for threatening to kill a co-employee. Stillwell had indicated on his employment application that he had been laid off by High Country Transport.

In addition to his work history, Stillwell disclosed two significant periods of unemployment.  The first totaled approximately 120 days from June 2006 through September 2006.  The second totaled 240 days from February 2007 through September 2007, while Stillwell was on bond in New Mexico, awaiting trial on felony embezzlement charges.  Defendant requires

verification of significant unemployment periods through a signed driver testimonial describing the circumstances leading to these periods.  Under company policy, a driver with two significant, unverified periods of unemployment should not be hired.  Stillwell submitted signed driver testimonials without actually answering any of the questions posed on the forms provided by Defendant for those testimonials.  Defendant maintains that these documents, which were completely blank other than the dates of unemployment and Stillwell's signature, were sufficient verification.

Defendant also reviews applicant's criminal background beginning with questions on the initial application regarding details and circumstances of felony convictions.  Stillwell indicated yes to this question.  Defendant, despite company policy, did not require Stillwell to indicate the number of felony convictions, the nature of the felony convictions, or the circumstances surrounding the convictions.  The only detail he included was the notation, "1979."  Defendant also has a policy of ordering a 20/20 criminal background check of a database that searches a subject by name and date of birth.  Depending upon the circumstances, Defendant may also order a more detailed social security number based criminal check known

as an E-Verifile report.  The cost of this more detailed criminal check is $25.

In November 2007, Defendant ordered a name-based criminal check of

Stillwell.  This check informed Defendant that Stillwell had a 1979 felony

conviction for theft in Maricopa County, Arizona.  Defendant chose not to

order a more detailed report on Stillwell's criminal background.  Because

the more detailed report Defendant could have chosen to order only

revealed the past seven years of a subject's criminal history, it would not

have revealed Stillwell's other run-ins with the law, including a 1995

conviction for false imprisonment under circumstances similar to those

involving Plaintiff.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the evidence] which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

Plaintiff's complaint contains four counts against Defendant.  First, Plaintiff  maintains that Stillwell was acting as an agent, servant, and employee of Smithway and that at the time of the incident he was conducting business on behalf of Smithway, thus making Smithway vicariously liable for the injuries of Plaintiff.  Plaintiff also contends that Defendant was negligent and wanton in the hiring and supervision of Stillwell as it ignored its own hiring policies and either knew or should have known that Stillwell was capable of committing the type of crimes he perpetrated against Plaintiff.  Plaintiff further contends that Defendant had the capability to track the exact location of the vehicle operated by Stillwell and should have inspected his vehicle based on his deviations from company procedure and predetermined direction of travel.   Finally, Plaintiff maintains that Defendant's negligence in failing to exercise reasonable care combined and concurred with the negligence of others.

A.    Vicarious Liability.

Alabama courts have identified three instances in which an employer may be vicariously liable for the acts of its employees and agents.  The acts

in question must be in the line and scope of the employment or in furtherance of the employer's business, or the employer must have participated in, authorized, or ratified the wrongful acts. *Joyner v. AAA Cooper Transp.*, 477 So. 2d 364, 365 (Ala. 1985).  Plaintiff argues that Stillwell was acting in the line and scope of his employment when he kidnapped and physically and sexually assaulted her.  (Doc. 38 at 40.)  An employee's act can be said to occur within the scope of his employment "if the acts are so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Ex parte Atmore Community Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998).  On the other hand, "[i]t is a general rule that where an employee abandons his employer's business for personal reasons the employment is suspended and the employer is not liable for the negligence of the employee during the suspended employment and during the time of the employee's departure from the employer's business."  *Chamlee v. Johnson-Rast & Hays*, 579 So. 2d 580, 582 (Ala. 1990).  While often a question for the jury, if the employee's deviation from the business of his

master is a "very marked and unusual deviation, the court may determine that the servant is not on his master's business at all." *Hendley v. Springhill Memorial Hosp.*, 575 So. 2d 547, 550 (Ala. 1990).

It is undisputed that, following the kidnapping of Plaintiff, and over the next few days in which he physically and sexually assaulted her in his truck, Stillwell continued to conduct business on the behalf of Smithway in Alabama, Georgia, South Carolina, North Carolina, and Florida.  (Doc. 38 at 8; Doc. 42 at 5).   Nevertheless, while Stillwell may have been on his master's business throughout the kidnapping and assault of Plaintiff, Alabama law does not support vicarious liability for the tortious actions themselves.   In *Hendley v. Springhill Memorial Hospital*, the Alabama Supreme Court found that a hospital was not liable when one of its medical equipment vendors, while repairing a broken piece of equipment, performed an unauthorized vaginal exam on a hospital patient. *Hendley*, 575 So. 2d at 549-50.  The Court held that this sexual assault was both unrelated to the employer's business and was necessarily marked and unusual. *Id.* at 550-51; *see also Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1002 (Ala. 1993) (holding that a store manager was acting in the scope of his employment when

falsely imprisoning a customer for shoplifting but was not acting in the scope of his duties when he sexually assaulted her during that imprisonment).  In making this finding, the Court stated that "Alabama jurisprudence is consistent with federal jurisprudence" and cited *Grimes v. B. F. Saul Co.*, 47 F. 2d 409 (D.C. 1931).  *Hendley*, 575 So. 2d at 551.  In *Grimes*, the Court of Appeals for the District of Columbia determined that a real estate corporation was not liable for a rape committed by one of its building inspectors against one of its tenants as his actions were a marked and unusual deviation from his duties.  *Grimes*, 47 F. 2d at 410.

Under these precedents, it is clear that Stillwell's actions were a marked and unusual deviation from his duties, one that he undertook for his own personal reasons.   Therefore, Defendant's motion for summary judgment as to vicarious liability is GRANTED.

B.  Negligent or Wanton Hiring, Retention, and Supervision.

Negligence "is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something that a reasonably prudent person would not have done under the same or similar circumstances."  *Ford Motor Co. v. Burdeshaw,* 661 So. 2d

236, 238 (Ala. 1995) (citing *Elba Wood Prods., Inc. v. Brackin*, 356 So. 2d 119 (Ala.1978)).   "[S]ummary judgment is rarely appropriate as to a claim alleging negligence," because these actions "almost always present factual issues of causation and of the standard of care that should have been exercised."  *Nunnelee v. City of Decatur,* 643 So. 2d 543, 545 (Ala. 1993). In order to establish negligence in Alabama, a plaintiff must show a duty to a foreseeable plaintiff, a breach of duty, proximate causation, and damage or injury.  *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).  The injury element of Plaintiff's claim is not disputed.

Wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *McDougle v. Shaddrix*, 534 So. 2d 228, 231 (Ala. 1988).   Thus, wantonness requires "some degree of conscious culpability."  *Rommell v. Automobile Racing Club, Inc.*, 964 F.2d 1090, 1096 - 97 (11th Cir. Ala. 1992). Unless there is a "total lack of evidence from which the jury could reasonably infer wantonness," the question of wantonness should be submitted to the jury.  *McDougle*, 534 So. 2d at 231.

In the context of a negligent or wanton hiring, retention, and supervision claim, "an employer has a duty to exercise reasonable care for the safety of his customers, patrons, or other invitees, and in fulfilling this duty he must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with [those persons]." *Brown v. Vanity Fair Mills, Inc.*, 291 Ala. 80, 82 (Ala. 1973).  In other words, an employer has a duty to the public to hire employees who can reasonably be expected to interact with the people those employees may come into contact with while fulfilling their obligations to the employer.  The employer has breached that duty when "notice or knowledge, either actual or presumed, of such unfitness has been brought to him . . . [or] would have come to his knowledge, had he exercised ordinary care." *Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970).  Furthermore, before an employer is subject to liability for the criminal actions of its employee, the particular conduct must be foreseeable based on the knowledge that the employer has or reasonably should have.  *See Meyer v. Wal-Mart Stores, Inc.*, 813 So. 2d 832, 839-40 (Ala. 2001); *Ex parte South Baldwin Reg'l Med. Ctr.*, 785 So. 2d 368, 370

(Ala. 2000) ("[T]he *particular* criminal activity, not just any criminal activity, must be foreseeable.")

Without question, Stillwell is a man with a checkered past and an extensive record.  In the late 1970s, Stillwell had a number of run-ins with Arizona authorities, including at least two felony theft convictions.[2]  (Doc. 38, Exs. 25, 28, & 29.)  Stillwell's criminal activity continued throughout the 1980s, resulting in arrests for possession with the intent to distribute, felony theft, and DUI.  (Doc. 38, Ex. 25 at 10-11; Ex. 27.)  In 1995, Stillwell was charged with unlawful restraint and false imprisonment.  (Doc. 38, Ex. 26.)  During this incident, Stillwell kidnapped a woman, tying her up in his tractor sleeper compartment.  He then transported her from Connecticut to a truck stop in Pennsylvania.  As a result of this incident, Stillwell eventually pled guilty to false imprisonment.  *Id.*  In 2002, Stillwell was arrested for making a terroristic threat, and in 2007, he faced an embezzlement charge.[3]  (Doc. 38, Ex. 25.)

---

[2] The parties argue over the interpretation of the 30 year old record of Stillwell, but he may also have been convicted of statutory rape in 1976 and assaulting a police officer with a deadly weapon in 1979.  (Doc. 38, Ex. 25, 28, & 29.)

[3] The charges for making a terroristic threat were eventually dropped.  (Doc. 38, Ex. 25.)

Given Stillwell's extensive history, particularly his apparent tendency towards violence, it is evident to the Court that, if Defendant knew or should have known of Stillwell's past, it is a question for the jury whether Defendant violated its duty to its "customers, patrons, or other invitees . . . to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with [those persons]." *Brown*, 291 Ala. at 82.  While it is a close question whether Plaintiff is the type of person contemplated by *Brown*, at least one court has interpreted *Brown* to include "persons [the employee] will be in contact with during his employment." *Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1337 (M.D. Ala. 2002).  While this formulation might be over broad, it seems particularly apropos in this instance.  Stillwell was a truck driver for Defendant who kidnapped Plaintiff from a gas station, repeatedly raping her in the back of Defendant's truck while continuing to work his job.  It seems reasonable that if Defendant had known, for instance, that Stillwell had previously detained a woman, tying her up in the

back of his truck, that it would be negligent in nevertheless providing him the means to commit a similar crime again.[4]

Did Defendant know, or through reasonable due diligence would it have known, that Stillwell was unfit for employment?  Defendant relies heavily on its assertion that "none of the research tools at Smithway's disposal (20/20 report or E-Verifile report)" would have revealed the criminal activity in Stillwell's past, in particular his conviction for false imprisonment.  (Doc. 35-2 at 15-16.)  It also points to numerous instances in which it followed the Federal Motor Carrier Safety Regulations.  *Id.* at 25-27.  Nevertheless, even assuming that Defendant met the minimal federal requirements for new hires, a jury might still find that a reasonable employer would engage in other steps, above and beyond those required by law, when determining the suitability of employees.

As to Stillwell's criminal record, for instance, Defendant argues that its failure to order a detailed criminal report is unimportant as it would not

---

[4] Defendant places great stock in *South Baldwin's* requirement that "the *particular* criminal activity, not just any criminal activity, must be foreseeable." 785 So. 2d at 370.  While this requirement might preclude a suit if Stillwell's prior criminal deeds had been limited to non-violent acts, it is clear from Stillwell's record that he had a propensity for committing violent crime.

have revealed relevant criminal history, particularly his 1997 conviction for false imprisonment, because these acts "occurred too remotely in time relative to Stillwell's application to work for Smithway." (Doc. 35-2 at 15-16.)  This is true as the e-Verifile report that Defendant would have ordered is only a seven year report.  (Doc. 36, Ex. 20.)  Mr. Nelson stated that "it would be impractical" to review criminal information that is "20 years — 30 years old." (Doc. 36, Ex. 1, Nelson Depo. at 282:19-20.)  In response to the question, would you feel "comfortable hiring someone who's been placed on probation for rape, has two felony convictions for theft, who has been sentenced to four years in prison, who has a probation violation," Mr. Nelson replied, "30 years ago, yes." (Doc. 36, Ex. 1, Nelson Depo. at 282:21-283:16.)  It is evident that it is for a jury to determine whether this opinion is reasonable.  It is also for a jury to decide whether Defendant had a duty to look further than seven years into an applicant's past before hiring that person.

Turning to Stillwell's employment history, federal regulations require that motor carriers verify significant periods of unemployment through testimony by the driver-applicant.  (Doc. 36, Ex. 1, Nelson Depo. at 110:8-

112:11.)  At the time of his application, Stillwell had  two significant periods of unemployment during the proceeding 24 month period.  (Doc. 38, Exs. 22 & 23.)  Stillwell's verifications for these two periods consisted of a blank form on which Stillwell provided no answers to any of the questions on the document.  *See id.*  Tom Nelson, Vice President of Human Resources and Safety for Defendant was asked, "So you feel like your company is meeting the federal regulations if, for instance you get the driver testimonial and the only thing that's on there is the driver's signature?"  To this question he responded, "That is the requirement."  (Doc. 36, Ex. 1, Nelson Depo. at 121:19-24.)  Later, in response to the question, "And you-all aren't going to do anything, especially if the driver doesn't fill out anything else on the piece of paper, to see whether he's telling the truth or not," Mr. Nelson responded, "Correct."  (Doc. 36, Ex. 1, Nelson Depo. at 141:20-24.)

Earlier in his testimony, Mr. Nelson lamented the fact that the company didn't "have a lot to choose from" when it came to drivers and that in the past it had often experienced shortages that kept their trucks from being "completely full from year to year."  (Doc. 36, Ex. 1, Nelson Depo. at 40:16-41:13.)  A jury may determine that the verification incident,

among others chronicled by Plaintiff such as Defendant's failure to follow up on clearly incomplete sections of Stillwell's application, along with Defendant's failure to search further into Stillwell's criminal past is indicative of a company that cut corners during the application process, satisfied to meet the bare minimum required by federal law in order to get more drivers on the road.  This conclusion is supported by Plaintiff's expert, who described Defendant's corporate policies as "window dressing," noting that his "criticisms revolve around the actual implementation of those policies and procedures or the consistency with those policies and procedures."[5]  (Doc. 38, Ex. 43 at 9; Ex. 44, Morgan Depo. at 70:5-8.)  Even if Defendant followed its standard policy in hiring Stillwell, only a jury can decide if that standard policy was itself reasonable.

As to the proximate cause element of negligence, it is evident to the Court that a jury may find this element satisfied in this matter.  The crime in question was committed in Defendant's vehicle while Stillwell was

---

[5] It is clear to the Court that a more thorough investigation may have revealed Stillwell's propensity for tying up women in the back of his truck.  For instance, Stillwell felt no compunction against bragging about his fighting ability during the orientation process.  (Doc. 36, Ex. 7, Harrison Depo. at 8-10.)

engaged in Defendant's business.  If Defendant is found to have failed to exercise the due care required when hiring Stillwell, this failure proximately caused the injury to Plaintiff and in fact allowed Defendant to commit the same type of crime in the same manner he had in  the past.[6] Therefore, the Court finds that Defendant has failed to carry its burden for summary judgement as to negligent hiring.[7]

---

[6] As to the negligent supervision aspect of Plaintiff's claim, Defendant's motion is GRANTED.  Plaintiff has produced no evidence that Defendant materially breached its duty to monitor Stillwell nor provided evidence of how any alleged breach proximately caused Defendant's injuries.  Even Plaintiff's expert agreed with Defendant that nothing in Stillwell's deviations from his suggested route around Atlanta should have alerted Defendant to his criminal activities.  (Doc. 38, Ex. 45, Morgan Depo. at 263-67.)  As to Plaintiff's claim that Defendant failed to properly inspect Stillwell's truck — based on Stillwell's claim to Massey that he had rigged the passenger side door so that it could not be opened — Plaintiff did not defend this claim in its response to summary judgment.  Furthermore the evidence shows that subsequent inspections of Stillwell's tractor did not reveal any issues with the passenger side door.  (Doc. 36, Ex. 17.)  Therefore, Defendant's motion is GRANTED as to the negligent inspection aspect of Plaintiff's claim.

[7] Defendant cites *Nash v. Segars*, 682 So. 2d 1364, 1365 (Ala. Civ. App. 1996) for the proposition that "In order to prevail in a negligent hiring case, a plaintiff must show that an employee was acting within the line and scope of his employment."  The *Nash* court cited *Brown v. Vanity Fair Mills, Inc.*, 291 Ala. 80, 83 (Ala. 1973) for this standard.  *Brown*, however, explicitly states, after expounding on the standard for negligent hiring cited above in the instant opinion that "we do not think that the rule [for negligent hiring] is applicable here.  In fact, we do not believe Plaintiff below proceeded on this theory."  *Id.* at 82.  While there are no doubt many similarities between these torts, they are distinguishable in an important way.  Vicarious liability allows the negligence of the employee to be imputed to the employer if that employee is acting in the scope of his duties.  Negligent hiring deals with the negligence of the employer itself.  *See Copeland v. Samford Univ.*, 686 So. 2d 190, 195-196 (Ala. 1996) (addressing vicarious liability and negligent hiring seperately); *Ledbetter v. United Am. Ins. Co.*, 624 So. 2d 1371, 1373

On the issue of wantonness, however, Plaintiff has failed to provide evidence that Defendant had consciously engaged in activity that would likely result in injury to others.  While the Court believes a jury may find that Defendant was negligent in its hiring process, no evidence has been produced to indicate that Defendant consciously ignored warnings that Stillwell would likely engage in the activity that forms the basis of this suit.

C.    Combined and Concurring Negligence.

Defendant has moved for summary judgment on combined and concurring negligence on the grounds that Plaintiff has presented no evidence that a non-party was guilty of negligence.  It is unclear exactly with whom Plaintiff maintains that Defendant's negligence concurs.  In the Complaint, Plaintiff maintains that Defendant's negligence concurred with the negligence of its co-defendant at the time, Western  (Doc. 1.)  As noted earlier, Western, the parent company of Defendant, was dismissed with

---

(Ala. 1993) ("Ledbetter admits that the actions of [the defendants] were outside the scope of their employment. . . . Thus, she does not rely on the theory of respondeat superior to hold the insurance companies liable for Fannin's alleged intentional tort of fraud. . . . Instead, Ledbetter seeks to hold the appellants liable under a theory of negligent supervision.")

prejudice on May 22, 2009.  (Doc. 21-23.)  In Plaintiff's response to summary judgment, Plaintiff makes no argument regarding concurrent liability other than stating that said negligence can concur with a non-party.  (Doc. 38 at 35-36.)  It appears that this claim is redundant at best and remains in this case only as an artifact of the time when Western was a party to this action.  As there appears to be no jury question involving this claim, Defendant's motion for summary judgment is GRANTED as to combined and concurring negligence.

> D.   Plaintiff's Motion for Partial Summary Judgment.

Plaintiff has moved for partial summary judgment on the defense of contributory negligence.  Defendant argues that it should be allowed to argue one species of contributory negligence, "failure to appreciate the danger when there is a reasonable opportunity to do so under the circumstances," before the jury.  *Alabama Power Co. v. Mosley*, 318 So. 2d 260, 263 (Ala. 1975).  Ordinarily, the "question of contributory negligence is . . . one for the jury."  *Hannah v. Gregg, Bland & Berry, Inc.*, 840, So. 2d 839, 860 (Ala. 2002).  In Alabama, a finding of contributory negligence is a

complete bar to recovery.  *See Campbell v. Alabama Power Co.*, 567 So. 2d 1222, 1225-29 (Ala. 1990) (Hornsby, C.J., dissenting).

Essentially, Defendant maintains that Plaintiff's decision to move to a dangerous area of Montgomery and her history of drug abuse and prostitution contributed to her own kidnapping and rape.  To the extent Defendant is arguing that were it not for Plaintiff's negligence she would never have been beaten and raped, the Court notes that "contributory negligence and assumption of the risk are not defenses to intentional torts." *USA Petroleum Corp. v. Hines*, 770 So. 2d 589, 595 (Ala. 1999) (discussing the doctrine in relation to a matter in which an employer was found vicariously liable for the actions of its employee).  *Hines*, however, involved a claim of vicarious liability,  one in which the negligence of the employee, and with it the intentional tort, is imputed to the employer.  *Id*.  As stated above, however, the Court has already granted summary judgment on the vicarious liability claim in this matter.   The only claim that remains is negligent hiring.  While the Court has not uncovered any Alabama Supreme Court precedent directly on this point, the reasoning of the Florida Supreme Court in *Island City Flying Serv. v. General Electric Credit Corp.* is

applicable here.  585 So. 2d 274 (Fla. 1991).  In *Island City*, the court noted, "Unlike a suit based on the doctrine of respondeat superior, this cause of action is grounded upon the negligence of the employer."  *Id.* at 278.  The employer was therefore "entitled to raise the defense of [contributory] negligence."  *Id.*

The same principle is in operation here.  The claim against  the employer — that it negligently hired Stillwell — is not that of an intentional tort, and Defendant should be allowed to present evidence of contributory negligence to the jury.  As such, the Court is not prepared to grant summary judgment on the issue of contributory negligence for either party. Therefore, Plaintiff's motion for summary judgment as to contributory negligence is DENIED.[8]

V.    Conclusion.

Having considered Plaintiffs' allegations and the evidence presented, it is apparent to this Court that the evidence is sufficient to create a jury question as to whether Defendants negligently hired Stillwell.  Therefore,

---

[8] The Court makes no comment on the propriety of arguing contributory negligence in a matter involving rape.

Defendant's motion for summary judgment is due to be DENIED in part and GRANTED in part.   Plaintiff's motion for summary judgment as to contributory negligence is DENIED.  A separate order will be entered.

Done this 27th day of January 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

153671